Good morning, your honors. I'm Daniel Smith for the defendant and appellant, Dr. Schwartz. We presented in our brief four reasons for reversing this judgment. I'm going to concentrate on two, but I'm not waiving the other two. The two we're going to concentrate on today are the lack of a reservation of rights. Counsel, on the reservation of rights, let me ask you something about that. Reservation of rights letters are really important in liability insurance cases. The duty to defend is broader than the duty to cover, so typically when the insurer has a doubt about the coverage duty, the insurer will send the policyholder a reservation of rights letter saying, we're defending you under a reservation of rights to dispute coverage. That's important because the insured relies on it. His own lawyer stays in the case in order to protect his interest because the insurance company's interest, if it may deny coverage, differs from the policyholder's interest. Well, we have a reliance interest here. Here, I cannot see what reliance interest Dr. Schwartz would have. They send him checks. He gets the checks. He doesn't change his conduct that I can see. How would he change his conduct? He lets his records be destroyed after a certain period of time. Did he have records that were destroyed? I thought they were destroyed in the flood. His computer records were destroyed in the flood, but his paper records existed. But since there was no lawsuit filed for six years after he went on claim, he didn't have the paper records to prove his own surgeries. That was prejudicial to him. If there had been a reservation of rights, just to close the loop on this, he would have been on notice that he had to keep all the evidence of his surgeries to show that he had been doing surgeries to earn a million dollars before he went on claim. Did the reservation of rights have to be asserted the first time that Equitable made the payment? I'm not going to hang my hat on that. I'm going to cite you to the California cases, which we cited. Blue Ridge, particularly in 25 Cal 4th, says you have to issue a reservation of rights in order to get restitution. Was that a third-party liability? It may have been, Your Honor, but that distinction doesn't exist in California law, and it wasn't raised by Equitable, the distinction that you're drawing between third-party and first-party. Can Equitable assert a reservation now with the next check that it pays Dr. Schwartz? Yes. So it could do that and then contest whether he's able to go back to work now. So it operates sort of like a running statute of limitations. Yes. If you agree with us that a reservation of rights letter should have been issued, the result would be that this $1.3 million is not recoverable. Let's say we did. It doesn't adjudicate whether or not what he was doing before he went on claim. That would be different. Let's say we did. Whether he was entitled to future payments. Let's say we did. You would be saying then Equitable waived its right to restitution because it did not reserve its rights to seek restitution of the payments. No. Now, why? Counsel, let me ask my question so you won't answer one different from what's on my mind. You would be saying, I think, that Equitable waived its right to seek restitution because it didn't reserve its right to seek restitution as it must under California law. However, Rule 8 says that waiver is an affirmative defense that has to be pleaded. Why wouldn't failure to plead waiver waive the waiver?  There are three answers to that question. First is we do not agree that our defense is waiver. Under California law, which we cited to you, the waiver is the intentional relinquishment of a known right and has to be proven by clear and convincing evidence. That's not what we are saying here. What we are saying is an element of their cause of action is the reservation of rights. They did not do it. They did not allege it. They did not prove it. So that's one of three answers. The best one you have for that? Pardon me? Is the case you already referred to the best one you have for that? Blue Ridge is your best authority for that? Well, and there are many cases that Blue Ridge cites. Well, which one says reservation of rights is an element of the claim? When you read Blue Ridge and the cases it relies on, can you cite me to a paragraph in Blue Ridge where it says the reservation is an element of the cause of action? No, I can't. I read Blue Ridge. I read it pretty carefully. I just didn't see that language in there. I'm not sure what to make of Blue Ridge. I'm not sure it helps the other side either because I don't know what it means. It doesn't seem to mean very much. Let's go to the next two answers. The second answer is we did not waive the waiver because this issue was in the case, as the judge acknowledged. You'll find in the transcript of November 18th of 2004 at pages 21 and 22, November 18th of 04, pages 21 and 22, the judge said regarding the reservation problem, he said they're not getting that money back. They're not getting restitution. On that day, the judge believed that the reservation issue was before him and he was ruling against equitable on that point. Okay. Where was that in the timing of you filing your answer and so forth? Oh, way after our answer. Way after our answer. Why didn't you move to amend your answer? I wasn't the trial lawyer. I don't mean you personally. It doesn't matter who was the trial lawyer. I mean why wouldn't courts have to amend his answer then and say when equitable says, well, you can't amend and add a new defense, and then the response would be, it's already there. It's already been discussed. The judge raised it. But on that day, we felt we were winning. He ruled in our favor. He said there's not going to be restitution. We didn't need to amend our answer. Then to our surprise. Over until the fat lady sings, and we're the fat lady. Well, I'm going to get to that point. You have the power to review this. You have to make a record. That's why you make sure your paperwork is. We made a sufficient record. I believe we made a sufficient record, Your Honor, because this is an issue of law that you are empowered to review de novo, whether or not it was raised in the trial court properly by us. Mind you, I've already said the judge acknowledged this case. This issue was before him. But I've cited to you the Romaine case and the Galindo cases, cases from the Ninth Circuit, Romaine in 799F2nd and Galindo in 793F2nd. And they say that this court can rule on a new issue of law when the facts are not disputed. It can rule on an unpleaded issue. Now, the facts are not disputed. Counsel, on this question, given my skepticism I've expressed to you about what Blue Ridge actually holds, is there any purpose, would there be any use in this case trying to certify this issue to the California Supreme Court? There might be. The question of reservation. There might be. And if you're in doubt, I encourage you to certify it. Let me sum up on this point. There was no prejudice to equitable from the manner in which the pleadings came in. By the time the judge ruled on November 18th of 04, they knew this issue was in the case. They couldn't put in a reservation of rights letter because they never sent one. So that's undisputed. Were they still paying? I'm not sure as of what date they stopped paying. When you say there was no prejudice, I'm thinking – There was no prejudice in the trial. If they were still sending checks, then they would certainly be prejudiced by not knowing that you were going to claim that mailing checks waived their rights. Well, they knew it. I'm not standing on that prejudice. I also, frankly, I'm quite – I don't see quite how a reservation of rights works here. When an insurance company gets a claim on a first party as opposed to a third party, it has a considerable concern about bad faith if it doesn't pay it. I appreciate that. Let me lay out my question. I don't have anything to say. It does not know that the person asserting the claim, whether for fire insurance or life insurance or disability insurance, is a crook perpetrating a fraud. So until it finds that out, it really has no business doing anything but paying. And if the person is a crook, well, then you'd send a reservation in every case. Well, they think we are a crook. They think he is a crook. They charged him with fraud. But they didn't know that at first. There has been a dispute going on for the last six years over what is prior occupation. They didn't know from the get-go. They eventually concluded that, but it seems to me that if your argument is right, that you can't get restitution unless you've sent a reservation of rights letter before sending the check, then in every first-party case, life, health benefits, all of these, in order to protect against fraud, insurance companies would have to send a reservation of rights letter every single time they get a case. I hear your concern. Let me offer a suggestion. You could rule that as soon as the insurance company is on notice of the potential of fraud in this case, or in general, it would then have a duty to issue a reservation of rights letter, and that question of fact was not resolved by this court, and you would remand this case for a determination of the fact issue raised by the ruling I suggest. Two problems with that, Counselor. You previously told me that this is like a statute of limitations, so it's going to bar restitution for certain claims. The second problem with that is that you've already told us that your client, in reliance on the continued payment by Equitable, has now destroyed all of his records and is severely prejudiced. Yes, sir. But you may or may not accept that. I want you to accept that. I want you to agree with me that we are the ones who are prejudiced and that there was no prejudice to Equitable from how this developed. But if you don't agree with me, I have an intermediate position, which is that you can send it back, find out as of what date they had questions, and as of that date, they should have sent a reservation of rights letter. I'm running out of time to talk about the other really important issue in this case, so with your consent, if I may just switch to this for one minute because it's fully laid out in the briefs, the plain error test. You have the right and the power to review the record in its entirety, particularly in a case like this where the findings of fact were printed, typed up by Equitable's attorney and adopted by the trial judge. That's not true. The judge marked over them heavily in his own handwriting. Okay. Well, look at Phoenix Engineering and see if that test is met, okay? What I think that case says is you give close scrutiny where the trial court adopts the winning party's findings and on the only fact that the judge relied on. But he didn't adopt the winning party's findings. He marked them over heavily in his own hand. The sole findings on what the doctor was doing, page 816 of the excerpts, volume 3, volume 3, page 816. The sole findings on which the trial judge rested his conclusion that Dr. Schwartz was not doing surgery before 94, before he went on claim, are all unmarked from paragraph 12 down to the end of that page. He did not change any of Equitable's findings. So his markings were not on that part. That's correct. But he did mark it up. With respect to other nonmaterial aspects. Tell me something else. Is the movie in the record? Do we have the movie? I didn't see it in the excerpts. No, it's not. You're talking about the golf, the video? It looked to me as though what happened to you in this case is you were winning until the judge watched the movie. Yes, and that was completely crazy in my opinion. Golf has nothing to do with surgery or repairing a car. The issue about surgery is patient safety, and Dr. Shanfield, their expert, agreed with us that safety questions issues are raised here by Dr. Schwartz. If he's in the middle of a surgery and he has a back spasm, which he did on one occasion, he can't continue the surgery. The patient is at risk. No patient fully informed of Dr. Schwartz's condition would ever consent to surgery from Dr. Schwartz. He is totally disabled. Well, the judge made a finding that Dr. Schwartz was a liar. They didn't get along. But we have to go by what the evidence says. And I am going to show you in about one minute that, first of all, he earned a million dollars in 92 and almost a million dollars in 93. That's not a lie. That's his W-2 form. It's not disputed. Two years later, his income went down to less than $350,000. How do they explain that? They have no explanation. And the judge had no explanation. And one of the reasons I'm a little energized about this case is that that fact stands out like the rock of Gibraltar. Undisputed. A man says he's doing 100 to 150 surgeries. Some of us took huge income cuts to become federal judges because we preferred the overall life to the money. Excellent point, Your Honor. And how does that apply to Dr. Schwartz? Wandering around the golf course enjoying himself after he's already as rich as he needs to be. That's completely contrary to the evidence. The evidence is that this man was a dedicated orthopedic surgeon. He loved his craft. He taught it. He proctored it. He served in one hospital on 10 committees that he chaired or co-chaired. He was named one of the top 10 orthopedic surgeons in Los Angeles. There is no evidence that he decided to kick back and live the life of Riley. Let me ask you something else about this now. Assuming that he's telling the truth, that he feels it would be unsafe to do any surgery. Dr. Shanfield said that too, please. They're expert. I'm trying to remember my question. I apologize. Let's assume that Dr. Schwartz was completely truthful and that he doesn't want to perform surgery because of the risk to the patients in case his back gives out during the surgery. Before his disability, 30% of his work was office visits. Plenty of orthopedic surgeons make several hundred thousand a year not doing surgery. They consult in the office, recommend courses of physical therapy, refer people to surgeons if necessary, do forensic evaluations. My guess is that all of us know plenty of three or four hundred thousand a year orthopedic surgeons who do that. Yes, and that's really exactly my point. He's not that kind of a surgeon. He is a surgeon. It looked like under the policy he has to be completely disabled from performing his occupation. It doesn't say he has to be completely disabled from performing his occupation in the way that he used to. Well, counsel, my colleague will tell you in the policy says substantial and material duties of his occupation. And so what we're arguing about here was doing 150 surgeries a year. Why is that a substantial duty? Plenty of orthopedic surgeons don't. They would say that's a different occupation. We're here because we're- They list themselves in the medical groups as orthopedic surgeons. That's their title. Just like I could be a lawyer and all I would ever do is consult and never go to court. They're board-certified orthopedic surgeons. But that's not the occupation. A lot of lawyers never do go to court. But he had the occupation of being a surgeon, Your Honor. So a lawyer who used to be a trial lawyer, but he developed some speech problems so he can't make a living as a trial lawyer anymore, but he can still make several hundred thousand dollars a year as a lawyer, he's totally disabled under this policy. I want to speak to that case. I've had several of these. That's a technical question. I'm just saying in this case, a man who did 150 surgeries a year and now cannot do one surgery at all is disabled under the meaning of their policy. I have to sit down now. Thank you, counsel. Good morning, Your Honors. Lauren Lindy on behalf of the equitable. I think I'm going to start now by addressing the issue of the reservation of rights, since that was brought out as primary by Mr. Smith. First of all, I have to say that factually some of the statements just made by Mr. Smith are inaccurate. That's one of the advantages that I actually was the trial lawyer on the case and Mr. Smith was not. There was ample evidence during this trial that Dr. Schwartz voluntarily had destroyed his records and that it was his policy to destroy his office and business records annually. I don't know what that is. That's true of most people, isn't it? Well, I don't, Your Honor. The Supreme Court case about accountants saying, well, of course they destroy their records every so often. Well, let me say this, Your Honor. In light of a disability policy which has a continuing obligation by an insured to provide proof of loss, in other words your monthly benefits which you're paid are based upon your showing the insurance company several factors. One is that you continue to be unable to perform the substantial and material duties of your occupation. The second one is that what your occupation is and what you're doing. In other words, you can't make that allegation and then when asked for proof say, well, I don't have an appointment book that establishes it or I can't provide documentation to you to show that I'm not doing these things at my work. Secondly, it's also important that during the underlying litigation where I was counsel, Dr. Schwartz was sanctioned by Magistrate Jeffrey Johnson because Dr. Schwartz and his wife actually shredded calendars during the pendency of the underlying litigation. So to stand forth in front of this court and say that Dr. Schwartz has prejudiced people. There's a reference on that. He shredded calendars in his home. Shredded calendars after the lawsuit was filed? Yes, Your Honor. What's the citation to the record for that? I will have to apologize. I don't have it. There was a ruling by Magistrate Jeffrey Johnson regarding that issue and I wasn't aware it was coming up this morning. I apologize. But it was during the pendency of the litigation. This was a case where there wasn't one interrogatory that was responded to by the defense without the need for a joint stip and a motion before the court. And at one of those hearings, one of the bases, Dr. Schwartz continued to say, I have no records, I have nothing, and then his attorney produced copies of a calendar and Magistrate Johnson said, where is the original? And it turned out that Dr. Schwartz and his wife had shredded it and they were sanctioned for that. Next point. When you're dealing with a situation, Mr. Smith portrays Dr. Schwartz as a victim here. This poor orthopedic surgeon received $15,800 a month tax-free, month after month, while the equitable sitting back in New York attempted to evaluate his claim and find out what his occupation was. Short of an insurance company having an obligation to hire investigators the minute a claim is presented, they rely upon what is provided by their insured. They rely upon information provided by the insured's treatment providers or doctors in attending physician statements, which are sent to be filled out. When you have a situation, as we now know, where the attending physician, Dr. Theodore Goldstein, didn't even read progress reports or AP statements, signed documents which contain information such as one where cervical pathology was listed, and he testified at trial, well, I never examined Dr. Schwartz for this, said that he wasn't sure if he even was provided with blank forms by Dr. Schwartz, and simply signed them, and it was acknowledged at trial that the forms were filled out by Dr. Schwartz and his wife at their home, you have a situation where the insurance company is on very, very uneven ground with their insured in terms of even discovering this information. Mr. Smith may not be aware, but the facts developed through litigation and at trial, that the reason the equitable became aware that Dr. Schwartz had misrepresented information was on an entirely different case involving a completely separate insured. They received a deposition where Dr. Schwartz had testified as an expert, and in that deposition, Dr. Schwartz testified to what his job duties were and how much expert testimony he was doing. That sent the equitable on a year-long investigation acquiring and culling depositions from around the country. Suddenly they came up with the information, Dr. Schwartz has another occupation that's never been listed, we've never heard about before. That was when the DEC relief action was filed. Are you saying that the occupation of going to the hospital and cutting on people is a different occupation from people coming in to you describing their pain, you diagnosing, and recommending medication or physical therapy or surgery or something else? No, I'm not saying that, Your Honor. I wouldn't believe there would be any surgeon who would have a patient come to a surgical center and have surgery without having diagnostics and without having whatever tests are on. What I'm saying is the medical legal work, which is separate, meaning where Dr. Schwartz was not the treating physician, was something that was unknown to the equitable until late 2000, at which point they began finding these depositions and running. These were not things ever provided by Dr. Schwartz, of course, and he was continuing to fill out occupation descriptions for the equitable, indicating here's how I divided my time in 1992-93. I had office practice. I saw patients. I made rounds at the hospital. Did the equitable actually uncover evidence that Dr. Schwartz was providing testimony during 1992-93? Yes, and that was read. There were 42 depositions, which I read excerpts of. I received and acquired certified copies. Forty-two depositions were read into the record that were both prior to that time as well as after that time. Most of them were after. And, in fact, of curiosity and related to Judge Kleinfeld's statement about the court finding Dr. Schwartz a liar, those depositions specifically include references by Dr. Schwartz to how much surgery he was continuing to perform. And, in fact, in one courtroom where he was testifying in trial, I believe it was Michigan or Minnesota, he even, when asked by the judge could he return the next day to continue testimony, said he could not because he had a two-level cervical fusion to perform the next day. This is after he had been on claim for approximately eight years. If, just a question about the policy, if he was regularly performing surgery and then he developed a back condition so that he couldn't perform surgery anymore and he changed to testifying as an expert, would he be totally disabled from his occupation? The way the policies work, Your Honor, is as follows. You are disabled based upon what your occupation is at the time you go on claim. If his occupation at the time he went on claim was as an orthopedic surgeon by title but someone who does not perform surgery but does a million dollars of Well, that wasn't my question. My question really was if he really is primarily performing surgery and then can't but picks up some other line of work as a medical expert, he wouldn't necessarily be disqualified from benefits. He would not necessarily be disqualified from benefits as long as he could show that surgery was the substantial and material duty of his occupation. So if he had been able to do surgery before a disability but he was doing one a week and then after his disability he could continue to do one a week, on that basis he would not be covered. You see, the distinction in this case is Dr. Schwartz did not purchase a policy that provided residual benefits or partial benefits. So we have to keep in mind the standard that needed to be reached at trial was only to demonstrate that Dr. Schwartz was capable of performing one surgery per week after the alleged disability. I want to make sure I understand something that you said a moment ago because I just overlooked it in my review of the case. He testified in Minnesota, was it? It was Minnesota or Michigan, Your Honor. Yes. As an expert witness in a case and he had been receiving benefits for how long at that point? I believe that testimony was around 97 or 98. And the judge said, can you return the next day? Correct. He said, no, I can't because I'm doing a cervical fusion tomorrow. Two-level cervical fusion the following morning. But there were numerous references in those doses. Could you please wait for my question? I'm so sorry. It's hard to remember what I want to ask you. I should start talking about something else first. Now, was he under oath when he said to the judge, I'm performing a two-level cervical fusion tomorrow, or was he not under oath when he said that? Your Honor, my recollection is that the jury in that case had been dismissed from the courtroom. He had been placed under oath. As I recall, he was still seated in the witness. Still in the witness box? Witness box, exactly. And they were discussing when he could return to complete testimony because it was close to 5 p.m. So he'd taken the oath. He's sitting in the witness box. The jury is gone, but he's still there, and the judge asks him the question. He says, I am performing surgery tomorrow. Yes. Where is that in the record? Again, Your Honors, I will just tell you this. It was on the first or second day of trial when all 42 depositions, there were excerpts from each, and I stood up. It took approximately two hours, and I read the title, the state it came from, the case numbers, and read the excerpts. If Your Honors look for it, you will find not only that deposition, but many of the others. But we're pretty much stuck with looking for it on our own. Yes. Now, is the movie in the record? I'm sorry? It looked to me as though you were losing this case until the judge watched the movie, and then you want it. I want to know, is the movie in the record? You know, I'm under the presumption that the movie was in the record, so this morning is the first time that I … How do we find the movie? I'm sorry? It's not in the excerpts, is it? There's not a DVD in the excerpts. You know, it was supposed to be attached, not to the excerpts, but when we designated it was part of it, and I'm not sure if … Are the exhibits still in the custody of the court? We can call for the exhibits. Yes, and it should be there. Oh, they're not … they haven't been returned to the lawyers? I don't believe so, but, you know, we're going back to 2004, so I'm not sure about that. If that were, you know, something that your honors needed and you wanted to supplement … Well, let me know. Yes. And it wasn't referenced. I felt that the record referred to it, and I'll just take exception to the statement that it looked like we were losing. I don't think as long as Dr. Schwartz was his own witness, and basically the only witness on his behalf at this trial, that the equitable was ever losing the case. I think one picture is worth a thousand words, and when someone says, I can't do something, I can't do something, and you put film on of someone doing it, it's compelling evidence. I think the evidence supporting the equitable also, I want to mention this $1 million a year business. Dr. Schwartz testified in many of these depositions, you'll see it was pointed out to the court, that he based his expert fees, which were $8,000 a day, and this is many years ago. $8,000 a day and greens fees was what he said in several of those depositions. He based that on how much time he would miss from the office performing surgeries. That was a statement he also made after he was already on claim. Final note, and then I'll reserve time. When Dr. Schwartz checked into court in Judge Liu's courtroom in the underlying case, there was a brief period of time he was in pro pur, and as a courtesy to him, because he didn't know the systems, I walked over, introduced myself, and said, if you give me your business card, I'll check in for you. And on that card, which was being produced in the year 2003, 10 years after Dr. Schwartz said he no longer performed surgeries, the card said on it, S. Andrew Schwartz, M.D., orthopedic surgery, arthroscopies, fractures, and sports medicine. Is that in the record? Yes. So Dr. Schwartz, the only party to which Dr. Schwartz apparently maintains that he can't perform surgery is the insurance company that paid him $15,800 a month year after year. Final note I want to make on our brief and our appeal regarding the determination on the issue of about how long the equitable can go back. This is a case of fraud. Dr. Schwartz withheld information, didn't provide information. And if one looks at the legal actions section, and I'm looking at it in the appellant's reply and cross-appellee's brief there, it's on page 52, it says, no action at law or equity shall be brought to recover under this policy prior to 60 days after written proof. The next sentence starts, no such action shall be brought, goes on, and it says you have to provide written proof. So what we're talking about is someone who's filing an action to recover under the policy. The equitable would not file an action to recover under its policies. Its insurance would. So under those circumstances, I don't believe that there was any statutory bar, and certainly in a circumstance where someone has misrepresented year after year and had the benefit, we can hardly portray this man as a victim. I guess I was wondering whether the trial judge was applying some sort of an implied condition of mutuality or something like that in opposing the limitation. Well, I'm not sure about that. And the comment that Mr. Smith referred to from November 18, 2004, was a comment by the judge saying this is something that was ruled on by Judge Fease before this trial. And so we were not trying that issue at the case that ultimately went to trial in front of Judge Fease. But it is, you know, the standard in the cases that have been brought up by the plaintiff in this case, this Romaine versus Scheer case, talks about a situation where the, quote, necessary facts were fully developed, end quote. That's not the case in this particular case. And if Your Honors look at the exhibits, you'll actually see there were several reservation of rights letters. I will admit they were not consistent, and they certainly don't go back to 1994 when the equitable had no reason to believe that it's insured. It's not telling the truth. On the statute of limitations issue, it occurred to me, sometimes fraud tolls the statute. Correct. In disability insurance, insurers are acutely aware of moral hazard. That's why they have the things in the applications that say you have to give us your tax returns to show how much you made. You have to sign under oath something saying what other disability policies you purchased so that they'll only sell you disability insurance for a fraction of your income in order to reduce the moral hazard. But there's always a lot of moral hazard. I would think that particularly with a skimpiest submission as Dr. Schwartz made, the insurance company would start paying him so that they don't get hit with bad faith, punitive damages, but they would also look into his claim. And it seems like they had enough time before limitations ran to look into his claim and fish or cut bait on the early years of payments. So I don't actually see why the district judge's decision on statute of limitations would be wrong. I understand Your Honor's argument, and I certainly see that there's some efficacy to it. I also see the unjustness of allowing someone who is perpetrating a fraud on an insurance company of getting away with it because the insurance company during all those times, Your Honor, was threatened by various counsel for Dr. Schwartz. People get away with a lot of stuff, not just fraud, but all kinds of things because of the statute of limitations. I understand that. What statute did the district court apply? The district court said that the equitable could recover going back to December 12, 1999. And Judge Liu's reasoning was that this legal action section provided this three-year period, and the lawsuit for deck relief was filed three years later. So it's contractual or an implied contractual? Yes, I believe that's his reasoning, yes. It didn't just look to a statute of limitations somewhere in the statute? No, that's what he applied. All right. I'm going to reserve some time. Thank you. Thank you, counsel. There's no point in reserving time because you're not going to get any more time. There's a cross appeal. Oh, cross appeal. I'm sorry. Thanks. Counsel? Thank you, Your Honor. Counsel's opening remarks, I think, are outside the scope of this appeal, and I would ask you to disregard them. I'm feeling completely sandbagged. The brief filed by Equitable on the issue that counsel started with, what was Dr. Schwartz doing before his injury, never once refers to any of those deposition statements that she cited, never once refers to his alleged statement to a judge that he had to get back for a cervical surgery. I was in no way aware that they were defending this case on that basis, and if you look at their brief from page 8, section A of their statement. Are they in the record? I can't say they're not because I didn't pay any attention to them because they weren't a focus. I thought the whole point of the red brief, or at least the part of the red brief on this issue, was that he was lying when he said he couldn't perform surgery. Right. That I understand. What counsel just said, as I heard it, was he was making a million dollars a year doing medical legal. And then she said, and after his injury, he was doing surgery. And I'm saying, if you look at page 8 to 14, where I would have been notified that that was a claim that they were making, that he had been going around lying about his surgeries and doing so to other courts and in depositions, I would have been alerted to respond to that. The response that I'm aware of generally is the doctor was advertising himself as a competent orthopedic surgeon in order to get. I don't think her point is that he was lying about his surgeries. The point was probably that he was doing surgery. She was telling the truth. And where is the evidence of a single surgery that he performed after his disability? Well, you tell the court in Minnesota, I can't come back tomorrow. I can't speak to that. I wasn't focused on tomorrow. That wasn't raised in their brief. But it was before the trial court. Well, we have counsel say so. This case was not tried on what went on from 94 to 99. And that could have been an issue. It was not tried on that basis. This case was tried on the issue of was he doing surgery before the injury and is he disabled now? So all that back and forth and whatever he said from 94 to 99, which counsel spent many, many minutes trying to pollute the atmosphere here telling you all about, was not the issue at trial. It wasn't resolved by the judge in his findings of fact. And I wasn't alerted to it. And I don't think you should spend any time worrying about that. They defined the boundary lines of their defense in this document. And it's not in there. I'm sorry. I said thank you, counsel. Oh, am I done? You're 52 seconds over. All right. Please correct this injustice. This judgment, one sentence, if I may. This judgment rests, as I pointed out to that page 814 or whatever it was in the judgment, on polluted hospital records that have errors on their face which have no foundation. Nobody could testify to how they were created. They are contradicted by the surgical nurse at Midway who said, we give block time to Dr. Schwartz and the only way you get block time, which means they give him a half a day every week whether he has a patient signed up or not, because they know he's a high volume producer. And every doctor who has eyewitness testimony, and there were three doctors who testified on behalf of Dr. Schwartz, contrary to what counsel said that he was the only witness on his behalf. That's not true. They all said he was an orthopedic surgeon, and Dr. Lurvie said he was one of the leaders in bringing business to the hospital. That completely undermines their case. And we ripped those computer records to shreds. We cited three cases why they should not be admitted and are not substantial evidence. And without those, the evidence is undisputed that he was doing 150 surgeries a year, and that's why this judgment should be reversed and he should be put back on claim and entitled to his benefits. Thank you, counsel. Thank you. I appreciate the extra time. Thank you, Loren. Lindy, briefly again. If this matter on our appeal should be remanded to Judge Fees, pursuant to the final findings of fact, conclusions of law located at page 791 through 800, at page 795 the first conclusion of law made by Judge Fees was, quote, at the time defendant went on claim for total disability in 1993, surgery was not a substantial and material duty of his occupation. The curiosity of a disability claim is as follows. Unlike most claims where you can establish your liability against the insurance company, disability benefits are paid monthly. And so there's an obligation each month, as I previously stated, for an insured to prove the disability. The disability, if it's claimed to have commenced, as this one was, November 1993, when Dr. Schwartz claims that he's still disabled from performing surgery, let's say in April 2008, we still have to relate back to what Dr. Schwartz was doing in his occupation in 1993 and immediately before that in order to determine if he's eligible for benefits. On that basis, since this Court can de novo review the determination made not by Judge Fees, but by Judge Lew in this matter, we would ask that that take place. And final note, the findings of Judge Fees. Judge Lew was our initial judge on the case, and it got transferred, I believe, for long cause reasons concerning Judge Lew. But what Judge Fees is the person who sat through eight hours a day, four days of trial testimony on this case. He has indicated in his findings and judgment that he evaluated the witnesses, their credibility, and, you know, unless we can find there's something clearly erroneous about his evaluation, this appeal, the appeal by Dr. Schwartz should fail. Thank you. Thank you, counsel. Thank you, counsel. Thank you. Equitable White v. Schwartz is submitted, and we return.
judges: Canby, Kleinfeld, Bybee